UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LOUISE TRAUMA CENTER LLC,**<br>       Plaintiff,<br><br>           v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY,**<br>       Defendant. | Civil Action No. 21-2371 (JDB) |

### MEMORANDUM OPINION

Louise Trauma Center LLC ("LTC") sued to enforce eleven Freedom of Information Act ("FOIA") requests it filed with the Department of Homeland Security ("DHS"). All but one of plaintiff's requests have been resolved. The outstanding request seeks "all records concerning" a DHS division charged with conducting asylum-related research. The parties have filed cross-motions for summary judgment as to (1) whether DHS conducted an adequate search or, alternatively, (2) whether LTC's request was invalid because it did not "reasonably describe" the records sought. The Court will grant summary judgment to DHS on the second basis.

### Background

LTC is a nonprofit organization "dedicated to raising awareness about immigrant women who have suffered from gender-based violence such as female genital mutilation (FGM), rape, domestic violence, and forced marriage." Compl. [ECF No. 1] ¶ 5. The organization filed eleven FOIA requests with DHS in 2020. See Def.'s Statement of Material Facts Not in Genuine Dispute [ECF No. 27-1] ("Def.'s SMF") ¶ 1; Compl. ¶¶ 7–62. After the agency failed to respond within the statutory time frame, LTC sued to have those requests enforced. See generally Compl. All but one of those requests has now been satisfied. See Def.'s SMF ¶ 8.

1

The last disputed request, denoted by the parties as Request #11, seeks the following:

> Request for records concerning the documentation Center required by 8 CFR 208.1b.
>
> Louise Trauma Center hereby requests a copy of <u>all records concerning</u> the documentation center maintained by the Director of International Affairs. Please give us a table of contents, rules, procedures, policy statements, annual reports, etc.
>
> 8 cfr 208.lb states:
>
> "The Director of International Affairs shall maintain a documentation center with information on human rights conditions."
>
> Dates: 1-1-20 through the date you begin to search

Def.'s SMF ¶ 1 (emphasis added); <u>see</u> Pl.'s Opp'n to Def.'s Mot. & Cross-Mot. for Summ. J. [ECF No. 29] ("Pl.'s Cross-Mot. & Opp'n") at 6.

DHS initially construed Request #11 as a duplicate of Request #10. Pl.'s Statement of Material Facts Not in Dispute [ECF No. 29-1] ("Pl.'s SMF") ¶ 2. Request #10 sought the following:

> Request for records compiled and disseminated by the Director of International Affairs
>
> Louise Trauma Center hereby requests a copy of all records <u>compiled and disseminated</u> by the Director of International Affairs, as required by 8 cfr 208.1b which states:
>
> The Director of International Affairs shall also, in cooperation with the Department of State and other appropriate sources, compile and disseminate to asylum officers information concerning the persecution of persons in other countries on account of race, religion, nationality, membership in a particular social group, or political opinion, torture of persons in other countries, and other information relevant to asylum determinations, and shall maintain a documentation center with information on human rights conditions.
>
> Dates: 1-1-20 through the date you begin to search

Def.'s SMF ¶ 5 (emphasis added). However, DHS reopened Request #11 after LTC asserted that each request sought different documents. Pl.'s SMF ¶ 4; <u>see</u> Def.'s SMF ¶¶ 6–7.

2

While processing Requests #10 and #11, DHS determined that LTC was quoting outdated regulations, and that the "documentation center" described in the cited regulation now refers to the Refugee, Asylum, and International Operations ("RAIO") Research Unit, and the "Director of International Affairs" now refers to the Associate Director of the RAIO Directorate. See Decl. of Jerrod Panter [ECF No. 27-2] ("Panter Decl.") ¶¶ 12–15.  Accordingly, pursuant to Request #10, DHS searched records of individual RAIO researchers tracking country conditions, as well as the relevant document management system, for information "compiled and disseminated" during the relevant time period. Id. ¶ 18.  DHS located 1,437 responsive pages and released 1,012 pages in full and 435 pages in part. Id.  LTC does not contest the adequacy of the search or the basis for withholdings as to Request #10.  Joint Status Report [ECF No. 24] ("June 20, 2023 JSR") at 1.

With respect to Request #11, DHS interpreted LTC's request to seek the specific kinds of documents listed in the request—"a table of contents, rules, procedures, policy statements, annual reports," and possibly records "similar" to those listed. Compare Panter Decl. ¶ 12 (indicating DHS interpreted the request to refer to those specific documents), with Second Decl. of Jarrod Panter [ECF No. 31-2] ("Suppl. Panter Decl.") ¶ 5 (indicating DHS also searched for documents similar to those listed).  DHS did not attempt a search for "all records concerning the documentation center." See Panter Decl. ¶ 12.  The search of the RAIO Research Unit turned up one responsive document, a 104-page set of Standard Operating Procedures for the RAIO Research Unit.  Def.'s SMF ¶ 2.  DHS released 83 pages of this document in their entirety and 21 pages in part. Id. ¶ 3.

In June 2023, the parties informed the Court that they had reached an impasse on Request #11.  June 20, 2023 JSR at 2.  LTC claimed that DHS had "misconstrued the request" and that "'all' means 'all.'" Id.  DHS maintained that it had performed an adequate search and located no further responsive documents. Id.  To resolve this remaining dispute, DHS filed a motion for

3

summary judgment. That motion makes two arguments. First, the agency claims that it performed an adequate search pursuant to a reasonable construction of Request #11. Def.'s Mot. for Summ. J. & Mem. in Supp. Thereof [ECF No. 27] ("Def.'s Mot.") at 5–8. In the alternative, DHS argues that Request #11 was invalid because it did not "reasonably describe the records sought." Id. at 8–11. LTC opposed DHS's motion and cross-moved for summary judgment on the same issues. Pl.'s Cross-Mot. & Opp'n. DHS submitted an opposition and reply, Def.'s Reply in Supp. of Mot. for Summ. J. [ECF No. 30] ("Def.'s Reply & Opp'n"), and LTC submitted a reply in support of its motion, Pl.'s Reply to Def.'s Opp'n [ECF No. 33] ("Pl.'s Reply"). The motions are now fully briefed and ripe for decision.

## **Legal Standard**

"[T]he basic purpose of the Freedom of Information Act [is] to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 372 (1976) (internal quotation marks omitted). To "ensure an informed citizenry, vital to the functioning of a democratic society," the law "requir[es] agencies to adhere to a general philosophy of full agency disclosure." U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989) (cleaned up). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

Ordinarily, FOIA cases are decided on summary judgment. See, e.g., Kayll v. U.S. Dep't of Homeland Sec., Civ. A. No. 22-2830 (JDB), 2024 WL 81231, at *3 (D.D.C. Jan. 8, 2024). A court may grant summary judgment based on affidavits or declarations that are "relatively detailed and non-conclusory." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). The question for the court is whether "[v]iewing the evidence

in the light most favorable to [the non-moving party], . . . it [can] be said that the [agency] affidavits [leave] no substantial and material fact to be determined and that [the moving party is] entitled to summary judgment as a matter of law." Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam). Agency affidavits are accorded a "presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Shapiro v. U.S. Dep't of Just., 40 F.4th 609, 613 (D.C. Cir. 2022) (quoting Bartko v. DOJ, 898 F.3d 51, 74 (D.C. Cir. 2018)).

## Analysis

As noted above, DHS makes two alternative arguments in support of its motion for summary judgment. Because the question of whether Request #11 is "reasonably described" is logically antecedent to whether the search was adequate, the Court begins there.

### I.  Reasonably Described

FOIA requires that agencies make available nonexempt agency records upon receipt of a request that "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A). Because a "reasonably describe[d]" request is a "prerequisite[] for triggering the agency's duties to search and produce responsive records," an agency is entitled to summary judgment when the requestor's submission is not sufficiently well-defined. Cato Inst. v. Dep't of Def., Civ. A. No. 21-1223 (JEB), 2023 WL 3231445, at *2 (D.D.C. May 3, 2023) (quoting MacLeod v. DHS, Civ. A. No. 15-1792 (KBJ), 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017)).[1]

---

[1] Whether a request is "reasonably described" is more frequently litigated as a ground for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). See, e.g., Gun Owners of Am., Inc. v. FBI ("Gun Owners"), 594 F. Supp. 3d 37, 42 (D.D.C. 2022) ("[A]lthough FOIA cases typically and appropriately are decided on motions for summary judgment, a motion under Rule 12(b)(6) is the appropriate vehicle for determining whether a plaintiff's request reasonably describes the records sought." (internal citations and quotation marks omitted)). However, courts in this district also grant summary judgment when a request is not "reasonably described." See, e.g., Cato Inst., 2023 WL 3231445, at *2; Sack v. CIA, 53 F. Supp. 3d 154, 163–65 (D.D.C. 2014).

"The linchpin inquiry is whether 'the agency is able to determine precisely what records are being requested.'" Dale v. IRS, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting Tax Analysts v. IRS, 117 F.3d 607, 610 (D.C. Cir. 1997)). On review, courts consider the request "as drafted, not as either agency officials or [the requester] might wish it was drafted." Nat'l Sec. Couns. v. CIA, 969 F.3d 406, 410 (D.C. Cir. 2020) (alteration in original) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)). A FOIA request "'reasonably describes' agency records when it 'would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" Am. Ctr. for Liberty & Just. v. U.S. Dep't of Homeland Sec. ("ACLJ"), 573 F. Supp. 3d 78, 81 (D.D.C. 2021) (alteration in original) (quoting Truitt v. Dep't of State, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)).

DHS argues that LTC's demand for "all records concerning the documentation center"—now understood by the parties and the Court to refer to the RAIO Research Unit—is not "reasonably described" because it is "impossible to limit its scope in any reasonable or manageable way." Def.'s Mot. at 9; see Suppl. Panter Decl. ¶ 10 (characterizing the request as "unreasonable").

The Court agrees. LTC's request for "all records concerning" the RAIO Research Unit is too amorphous to constitute a valid FOIA request. The RAIO Research Unit is a division of DHS dedicated to researching "up-to-date, credible, and objective [country of origin information] on human rights and country conditions to assist in the timely adjudication of [refugee, asylum, and international operations] applicants' claims." RAIO Standard Operating Procedures [ECF No. 27-4] at 4. Researchers within the unit draft memos and briefing reports on human rights and migration issues, respond to queries from adjudicators and DHS staff, and conduct related trainings, among other responsibilities. Id. A request for records "concerning" the RAIO Research Unit includes all documents having some relation to the activities of an entire division of the Department. As DHS contends, it refers to everything from "emails . . . discussing the Research

6

Unit," to "news summary bulletins," "terrorist-related inadmissibility grounds working papers," and "documents concerning staffing . . . [or] funding of the Unit." Def.'s Mot at 10; see Concerning, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/concerning (defining "concerning" as "relating to" or "regarding"). The request has no discernable outer bounds.

Judges in this Circuit routinely hold that requests for records that "pertain to," "relate to" or "concern" a topic or person do not "reasonably describe" the records sought. See, e.g., Nat'l Sec. Couns., 969 F.3d at 409–10 (request for all CIA records "pertaining to the IBM supercomputer named 'Watson'" was "not . . . confined" and "called for an unreasonably burdensome search"); Pinson v. U.S. Dep't of Just., 245 F. Supp. 3d 225, 244–45 (D.D.C. 2017) (request for all documents "concerning the activities" of two federal prison gangs was "too vague"); Freedom Watch, Inc. v. Dep't of State, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (request for records that "refer or relate" to certain subject areas was "fatally overbroad"). "The problem for an agency responding to such a request is that the lack of clarity leaves the agency to guess at the plaintiff's intent." Sack, 53 F. Supp. 3d at 164.[2]

Here, it might be argued that the second line of LTC's request sufficiently constrains the scope of the first. The second sentence, "Please give us a table of contents, rules, procedures, policy statements, annual reports, etc.," could be construed as a limiting descriptor, delimiting the request to records similar to those enumerated in this sentence. Indeed, DHS claims this interpretation is the only "reasonable" construction of LTC's request. Panter Decl. ¶¶ 12–13; Suppl. Panter Decl. ¶ 5.

---

[2] As a judge in this district has explained, there is a "difference in kind between requests for documents that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining to,' 'relating to,' or 'concerning' the same." Shapiro v. CIA, 170 F. Supp. 3d 147, 155 (D.D.C 2016). While a request for documents "mentioning" or "referencing" a specific topic may produce thousands or millions of results, there can be little question about precisely which records are sought. When a request is not "reasonably described," it is difficult to discern the contours of what the requestor seeks.

However, LTC has repeatedly and vehemently denied that its request is limited in any way. In its briefing, LTC argues that the second sentence does not limit the scope of the request at all. To the contrary, LTC claims that it "shows that the plaintiff has a broad, general interest." Pl.'s Cross-Mot. & Opp'n at 15. LTC's statement is consistent with the position it has taken for months. In April and June 2023, for example, LTC submitted status reports asking that DHS "construe the word 'all' to mean 'all.'" Joint Status Report [ECF No. 23] ("April 24, 2023 JSR") at 2; see June 20, 2023 JSR at 2. LTC emphasized in one report that the request "has two sentences," suggesting as it did in summary judgment briefing that its request was for "all" records, and that the second sentence was not intended to limit the scope of the first. June 20, 2023 JSR at 1–2. Further, LTC made plain that it was "certain there are more responsive documents," id. at 2, and expressed bewilderment when "[d]efendant respond[ed] to [its] request with only 104 pages," April 24, 2023 JSR at 2. LTC's statements amount to a concession that its FOIA request is not amenable to the more constrained reading. To the extent that reading was available, LTC has disclaimed it. And under the broad construction advocated by LTC, the request fails to give the agency "adequate guidance in locating responsive documents." Gun Owners, 594 F. Supp. 3d at 51. It is too "[b]road, sweeping . . . [and] lacking specificity" to require a response. Id. at 42 (alteration in original) (quoting Dale, 238 F. Supp. 2d at 104).

## II. Duty to Notify

LTC suggests that summary judgment should nonetheless be denied because DHS failed to inform it "of any perceived deficiencies in" Request #11. Pl.'s Cross-Mot. & Opp'n at 17.[3] As

---

[3] LTC also claims that summary judgment should be rendered in its favor due to this failure to notify. See Pl.'s Reply at 8 ("Plaintiff's request was reasonably described. If it wasn't, DHS failed to promptly notify Plaintiff of the possible problems. Therefore, summary judgment should be rendered in favor of Plaintiff."). Granting summary judgment for LTC could hardly be the right result; doing so would suggest that LTC had drafted a request the agency could reasonably research. Rather, the cases in this district suggest that granting a plaintiff summary judgment would be appropriate only if the Court or the parties could identify a reasonable interpretation of the request, notwithstanding the agency's contentions. See New Orleans Workers' Ctr., 373 F. Supp. 3d at 34 ("[D]efendant appears to have resolved any issues presented by the specific deficiencies it identifies in the plaintiffs' Request."); Parker v. U.S. Dep't

LTC notes, courts in this district have denied motions to dismiss and motions for summary judgment when the agency failed to negotiate the scope of a FOIA request contrary to its own regulations.  See, e.g., Wright v. U.S. Dep't of Health & Hum. Servs., Civ. A. No. 22-1378 (RC), 2022 WL 18024624, at *4 (D.D.C. Dec. 30, 2022) (denying motion to dismiss as to whether documents were reasonably described when the agency failed to comply with its own regulations requiring notification of inadequacy); New Orleans Workers' Ctr., 373 F. Supp. 3d at 28 (denying motion for summary judgment as to adequacy of search when the agency did not follow its own regulations requiring notification and issues with the search's scope had apparently been resolved); Parker, 852 F. Supp. 2d at 13–14 (denying motion for summary judgment as to whether documents were reasonably described when the agency failed to notify requestor as required by regulation).

But the Court does not find similar relief appropriate under the facts of this case.  To begin, while DHS's regulations recommend that agencies contact requestors about narrowing their requests, the regulations do not require this course of action.  See 6 C.F.R. § 5.3(b)–(c) (2022); Def.'s Opp'n & Reply at 10–11.[4]  Further, courts in this district are not even in accord as to the significance of an agency's failure to notify a requester of an excessively vague request.  Some courts have treated violation of a notice requirement as "merely a factor in the summary-judgment analysis" while others have treated it as "nearly dispositive." Cato Inst., 2023 WL 3231445, at *5.  Accordingly, some courts have granted summary judgment for the agency even when the agency did not clearly raise the vagueness issue previously.  See id. at *5–6 (granting summary judgment despite agencies' failure to specifically note that the request was not reasonably described); cf. Sai,

---

of Just. Exec. Off. for U.S. Atty's', 852 F. Supp. 2d 1, 13–14 (D.D.C. 2012) ("The Court finds this request clear enough to constitute a valid FOIA request.").  While denying judgment to the agency to permit the parties to negotiate the scope of the request may be appropriate in some cases, see Charles v. United States, Civ. A. No. 21-1983 (BAH), 2022 WL 951242, at *6 (D.D.C. Mar. 30, 2022) (denying motion to dismiss where DOJ had failed to negotiate the scope of the request), it is not warranted here for the reasons discussed.

[4] DHS's regulations, as applied in New Orleans Workers' Center, formerly required consultation, but have since been revised.  See 373 F. Supp. 3d at 33 n.5 (noting the subsequent amendment to 6 C.F.R. § 5.3(b)).

9

315 F. Supp. 3d at 250 (rejecting plaintiff's contention that the agency waived its right to contest the scope of the request by providing a partial response).

Most significantly here, the record demonstrates that the parties went back and forth about the scope of LTC's request for at least eight months between the filing of the lawsuit and summary judgment. See Def.'s Reply & Opp'n at 11. While DHS may not have specifically criticized the request for being not "reasonably described," the parties' communications suggest that competing interpretations of the request's scope was the central issue. For example, in October 2022, LTC advised the Court in a status report that it believed DHS had "misconstrue[d] the request and did an inadequate search." Pl.'s Status Report [ECF No. 17] at 5. DHS acknowledged that LTC had "raised issues regarding the search" and stated that it was "open to receiving [search] suggestions and determining if additional searching is warranted." Def.'s Status Report [ECF No. 18] ¶¶ 6–7.[5] Unlike in New Orleans Workers Center, where the court found no evidence in the record that the agency had confronted the requestor about the scope of its request prior to summary judgment, 373 F. Supp. 3d at 34, the evidence here suggests that the boundaries of LTC's request were always at issue, and that LTC had numerous opportunities to explain what it wanted from the agency. Cf. Charles, 2022 WL 951242, at *6 (denying motion to dismiss where agency "made no effort to confer with plaintiff to resolve any issues at any point prior to filing its motion to dismiss, in violation of its duty to confer outlined in its own FOIA regulations").

Despite this persistent dispute, the Court is not aware of any effort by LTC to assist the agency in narrowing or defining the boundaries of its request. Cf. Nat'l Sec. Couns., 969 F.3d at

---

[5] Other evidence from the parties' communications suggests a similar dispute. For example, in December 2022, January 2023, and March 2023, the parties filed joint status reports continually acknowledging LTC's concern that its request had been "misconstrued." Joint Status Report [ECF No. 20] at 6; Joint Status Report [ECF No. 21] at 7; Pl.'s Status Report [ECF No. 22] at 4. In April 2023, LTC submitted a status report expressing bewilderment that "Defendant respond[ed] to [a request for "'all' records"] with only 104 pages." April 24, 2023 JSR at 2. Then and again in June 2023, LTC asked the agency to "construe the word 'all' to mean 'all.'" June 20, 2023 JSR at 2.

10

10 (faulting requestor for failing to "refine its request after the [agency] invited it to do so"). LTC claims that it could not, because it lacked knowledge about the types of records in the agency's possession. See Pl.'s Cross-Mot. & Opp'n at 15. And LTC suggests it is now better positioned to help since DHS has listed in its motion for summary judgment various documents to which a request for "all records" could refer. Id. at 15–16, 18. The problem is that those "suggestions" derive from either common sense (e.g., documents concerning staffing and funding), or the one document DHS produced responsive to Request #11. See Def.'s Resp. to Pl.'s SMF [ECF No. 31-1] ¶¶ 8–9 (noting that documents were "mentioned in the Standard Operating Procedures"). "FOIA does not require that the government go fishing in the ocean for fresh water fish," Freeman v. U.S. Dep't of Just., Civ. A. No. 90-2754 (SSH), 1991 U.S. Dist. LEXIS 19214, at *5 (D.D.C. Oct. 16, 1991), and the Court will not deny summary judgment when plaintiff has failed to suggest it seeks anything less than "all records concerning" an entire division of DHS.[6]

## Conclusion

For the reasons stated above, DHS's motion for summary judgment will be granted, and LTC's cross-motion for summary judgment will be denied. A separate Order consistent with this Memorandum Opinion will issue.

/s/
JOHN D. BATES
United States District Judge

Dated: February 20, 2024

---

[6] The Court does not reach the question whether DHS's search was adequate.