UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LOUISE TRAUMA CENTER LLC,

     Plaintiff,

     v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

     Defendant.

Civil Action No. 21-2371 (JDB)

## MEMORANDUM OPINION

Plaintiff Louise Trauma Center LLC ("LTC") seeks an award of attorney's fees and costs incurred in litigation over several requests for information from the Department of Homeland Security ("DHS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  For the following reasons, the Court will grant the motion in part and award LTC $43,895 in attorney's fees and costs.

## Background

Louise Trauma Center describes itself as a nonprofit organization "dedicated to raising awareness about immigrant women who have suffered from gender-based violence such as female genital mutilation (FGM), rape, domestic violence, and forced marriage."  Compl. [ECF No. 1] ¶ 5.  In May and September 2020, the organization filed eleven FOIA requests with DHS.  See id. ¶¶ 7–62.  The requests concerned records of training for asylum and FOIA officers, as well as information about a DHS asylum research office.  See id.  DHS acknowledged receipt of the requests and assigned them processing numbers.  See id.  But DHS did not provide any substantive response until LTC filed suit under FOIA in September 2021, about twelve to sixteen months after the FOIA requests were filed.  See id.

Once the lawsuit was initiated, DHS began conducting searches and releasing records responsive to LTC's requests. See LTC's Mot. for an Award of Att'y. Fees & Costs [ECF No. 36] ("Mot."), Ex. A [ECF No. 36-1] ("Case Chron.") at 1–2. Beginning in December 2021, the agency produced thousands of pages of records and the parties conferred about the adequacy of searches and propriety of DHS's withholdings. On July 26, 2022, following a joint status conference, the Court ordered DHS to produce non-exempt documents responsive to LTC's remaining requests and ordered the parties to further confer about remaining issues. Order [ECF No. 16] at 1. The parties subsequently submitted status reports informing the Court of the status of production. See Docket Sheet. After months of negotiation between the parties, DHS released 11 media files and 8,779 pages, in whole or in part. See Case Chron. at 3.

In June 2023, the parties advised the Court that they had resolved all requests except for one: Request #11, which sought "all records concerning the documentation center maintained by the Director of International Affairs." See Joint Status Rep. [ECF No. 24] at 1. The parties filed cross-motions for summary judgment, which the Court resolved in favor of DHS, concluding that Request #11 did not "reasonably describe" the records sought, and, therefore, that DHS was not required by law to respond. See Mem. Op. [ECF No. 35] at 1, 6.

On February 28, 2024, LTC filed a motion for attorney's fees of $89,730, fees on fees of $21,934, and costs of $402. Mot. at 1. DHS opposed the motion, conceding that LTC is "eligible for fees" but arguing that fees should be denied entirely because LTC is not "entitled" to them or because LTC's demand was outrageous. See Def.'s Mem. in Opp. to Mot. [ECF No. 39] at 4, 19. Alternatively, DHS contends that the Court should reduce the award requested substantially, to fees of $3,085.56 and fees on fees of $1,830.40. Id. at 29, 31. LTC filed a reply. LTC's Reply to Opp'n [ECF No. 40] ("Reply"). The motion is now fully briefed and ripe for resolution.

**Legal Standard**

FOIA provides for recovery of reasonable attorney's fees where the requester has "substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  The D.C. Circuit has long applied a two-part test to determine whether fees should be awarded.  See Brayton v. Off. of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011).  Under the first part, "eligibility," a court considers whether the requester "may" receive fees because he or she has "substantially prevailed" in the litigation.  See id.  A FOIA requester "has substantially prevailed if the complainant has obtained relief through either" a court order or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii); see Grand Canyon Tr. v. Bernhardt, 947 F.3d 94, 96 (D.C. Cir. 2020).

If the requester is "eligible" for a fee award, the court proceeds to the second part: whether fees "should" be awarded because the requester is "entitled" to them.  See Kwoka v. IRS, 989 F.3d 1058, 1063–64 (D.C. Cir. 2021).  When considering the entitlement prong, courts look to four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  Id. at 1063 (quoting Morley v. CIA ("Morley I"), 810 F.3d 841, 842 (D.C. Cir. 2016)).  "[T]he first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage."  Davy v. CIA, 550 F.3d 1155, 1160 (D.C. Cir. 2008).  The fourth factor, by contrast, considers whether the agency's position "had a reasonable basis in law," Tax Analysts v. DOJ, 965 F.2d 1092, 1096 (D.C. Cir. 1992), and asks whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior," McKinley v. FHFA, 739 F.3d 707, 712 (D.C. Cir. 2014).  While the burden of proving entitlement generally rests with the requestor, Weisberg v. DOJ, 745 F.2d 1476, 1495 (D.C. Cir. 1984), the agency bears the burden

of showing that any withholding was reasonable, <u>Davy</u>, 550 F.3d at 1163.  "No one factor is dispositive" of the entitlement inquiry except that "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  <u>Id.</u> at 1159.

Finally, the court calculates a "reasonable" fee award.  Because FOIA provides only for the assessment of "reasonable" attorney's fees, 5 U.S.C. § 552(a)(4)(E), the prevailing party must show that counsel's requested rates reflect prevailing market rates for the type of work performed and provide documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." <u>Role Models Am., Inc. v. Brownlee</u>, 353 F.3d 962, 970 (D.C. Cir. 2004); <u>see</u> <u>Louise Trauma Ctr.</u> <u>LLC v. DHS</u>, Civ. A. No. 20-1128 (TNM), 2023 WL 3478479, at *3–4 (D.D.C. May 16, 2023).

### Analysis

Applying the FOIA fees framework to this case, the Court concludes that LTC is "eligible" for attorney's fees because it substantially prevailed in the litigation.  Further, LTC is "entitled" to fees because the public derived benefit from the requested information and DHS lacked a colorable basis for withholding the information prior to the onset of this litigation.  However, the Court finds that the requested fee award is not reasonable because LTC's counsel billed time for some improper and excessive tasks and many of the time-keeping records lack sufficient detail to assure the Court that time was reasonably expended.  The Court will reduce the hours-billed figure by fifty percent to account for these significant defects and will award LTC $43,895 in fees, costs, and fees on fees.

### I.   Eligibility and Entitlement

#### A.   Eligibility

As noted above, the first question when ruling on a request for FOIA attorney's fees is whether the requestor is "eligible" for fees because they have substantially prevailed in the

litigation.  Here, DHS concedes that LTC is eligible for fees.  Opp'n at 4.  And the Court agrees

for two reasons.  First, the Court issued a production order in this case, which has been held to

render a requester the prevailing party.  Jud. Watch, Inc. v. FBI, 522 F.3d 364, 367–68 (D.C. Cir.

2008); Elec. Priv. Info. Ctr. v. DHS ("EPIC v. DHS I"), 218 F. Supp. 3d 27, 39 (D.D.C. 2016).

Second, DHS's unexplained failure to produce any documents in the year or more after the requests

were submitted raises an "inference that the agency forgot about, or sought to ignore, [LTC's]

request," and that filing of this lawsuit caused DHS to change its position about responding at all.

EPIC v. DHS I, 218 F. Supp. 3d at 41 (quoting Harvey v. Lynch, 178 F. Supp. 3d 5, 8 (D.D.C.

2016)).

### B.  Entitlement

Next, the Court applies the D.C. Circuit's four-factor test to determine whether LTC is

"entitled" to fees.  The first factor is whether the public derived benefit from LTC's request.  DHS

concedes that this factor of the test is met, and the Court concurs.  Under D.C. Circuit precedent,

this factor is satisfied if it is "plausible ex ante that a request has a decent chance of yielding a

public benefit."  Morley I, 810 F.3d at 844.  That is, "the request must have at least a modest

probability of generating useful new information about a matter of public concern."  Id.  LTC's

requests for information about the asylum process concern an important issue in the public

discourse and satisfy the public benefit factor.  See Mot. at 16.

The second and third factors—commercial benefit to the plaintiff and the nature of the

plaintiff's interest in the records—are frequently considered together.  These factors evaluate

whether the requestor would be incentivized to sue for the records absent fee shifting because they

already have a strong commercial or private interest in obtaining the records.  Davy, 550 F.3d at

1160.

LTC contends that it meets the second and third factors because it is a "non-profit organization" whose interests are "not frivolous or purely commercial." Mot. at 18. It notes that the organization "posts documents on a regular basis on its website" and "[i]ts lawyers use the materials in articles published on ILW.com and elsewhere." Id. at 17; see Compl. ¶¶ 4–5 (describing LTC as a "nonprofit organization" "dedicated to raising awareness about immigrant women who have suffered from gender-based violence . . . help[ing] women seek asylum . . . publiciz[ing] and educat[ing] . . . [and] set[ting] forth new asylum cases, briefs, reports, and analysis on the law surrounding these women and their issues").

DHS challenges the veracity of LTC's self-characterization as a non-profit, noting that publicly available information suggests LTC is not registered as a tax-exempt organization with the IRS and that LTC is registered as a limited liability corporation with the D.C. government. Opp'n at 5; Opp'n, Ex. B [ECF No. 39-2] ("LTC Registration"). DHS further assails LTC's description of itself as "dedicated to raising awareness" and "help[ing] women who seek asylum," noting that LTC's website is primarily a compilation of links to document files and that the posts on ILW.com mostly summarize document requests rather than providing analysis of the law. Opp'n at 5–6. Finally, DHS points the Court to LTC's long history of FOIA litigation against DHS and other federal agencies. Id. at 6–7 (citing ten pending and three closed cases in the District of Columbia and the District of Maryland). Based on these considerations, DHS argues that "it is apparent that Plaintiff seeks records not likely for the purpose of disseminating information about the Government to the public[;] its interest in the documents is proprietary or private [in] nature and does not support an award of fees." Id. at 7.

The Court shares some of DHS's concerns about the lack of support for LTC's claims about its corporate identity and its interests in this case. However, the Court disagrees with DHS that it can infer that LTC's incentive is commercial or otherwise "personal" merely from the lack

of support for LTC's claims on its website.  Opp'n at 6–7; cf. Davy, 550 F.3d at 1160 (reversing district court's holding that requesting documents to research a book was "clearly commercial"). Cases finding a private interest weighing against a fee award typically turn on a specific profit motive or a particular requester's personal interest in the records sought.  See STS Energy Partners LP v. FERC, 214 F. Supp. 3d 66, 71 (D.D.C. 2016) (interest in private litigation campaign); Zynovieva v. DOS, Civ. A. No. 19-3445 (RDM), 2023 WL 2755599, at *8 (D.D.C. Mar. 31, 2023) (interest in preparing for visa interview), aff'd, 2024 WL 1946592 (D.C. Cir. Apr. 30, 2024); see also Tax Analysts, 965 F.2d at 1095–96 (interest in speedily obtaining already public information for commercial dissemination).  DHS might be insinuating that LTC's counsel has a private interest in obtaining attorney's fees from FOIA litigation pursued on behalf of an LLC registered to an individual who shares counsel's last name.  See LTC Registration at 3; Tax Analysts, 965 F.2d at 1095 (for purpose of evaluating the interest factor "a motive need not be strictly commercial; any private interest will do").  But because DHS neither directly makes nor substantiates this argument, the Court will not address it further.

Moreover, the Court finds that LTC has made some public use of the documents it received, including sharing them online and including them in blog posts.  LTC may not be very effective at sharing the information it receives, but there is at least some public interest in LTC's pursuit and release of the records.  Cf. Tax Analysts, 965 F.2d at 1094 (weighing limited benefit of sharing information with small audience).  Ultimately balancing these considerations, the Court finds that the second and third factors weigh slightly against a fee award.

The fourth and final factor is the reasonableness of the agency's withholding of the requested documents.  This inquiry includes consideration of "whether the agency has shown that it had any colorable or reasonable basis for not disclosing" the relevant material and "whether the agency has not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate

behavior." Davy, 550 F.3d at 1162–63.  When a government agency does not provide information before a lawsuit is filed, the burden is on the agency to provide an explanation.  Id.  It is not enough for the government to say that "it offered no resistance" after suit.  Id.  While the bare fact that an agency did not produce documents within the statutory timeframe does not automatically satisfy this factor, Morley v. CIA ("Morley II"), 894 F.3d 389, 393 (D.C. Cir. 2018), a lengthy, unexplained delay has been held to satisfy it, Davy, 550 F.3d at 1163; see STS Energy Partners LP, 214 F. Supp. 3d at 72 (finding agency lacked a reasonable basis for withholding documents when it stonewalled requests until lawsuit was filed, then promptly made disclosures).  Here, DHS has offered no explanation for why it failed to do anything more than assign processing numbers to LTC's requests in the twelve to sixteen months between submission of the requests and filing of the lawsuit.  See Mot. at 19; cf. Morley II, 894 F.3d at 393 (crediting government's evidence that it was swamped with a large backlog of requests and that plaintiff's request was properly proceeding through the queue).  Accordingly, DHS has not met its burden to show that it had a reasonable basis for its sluggish response to LTC's request.

DHS contends that the fourth factor is not satisfied here because "there was no improper withholding," apparently construing "withholding" to refer only narrowly to documents withheld for a legal reason, such as an exemption to FOIA.  Opp'n at 7–8.  DHS argues that the fourth factor cuts in its favor because LTC was ultimately satisfied with litigation disclosures and the one withholding actually litigated resulted in summary judgment for DHS.  But this analysis simply ignores Davy, which requires courts to consider the propriety of the agency's delay in producing information, not only the agency's position on whether the information must be legally disclosed. 550 F.3d at 1162–63.  Indeed, DHS has lost on this same argument before.  See EPIC v. DHS I, 218 F. Supp. 3d at 45–46.  And none of the cases cited by DHS support the position that an agency's subsequent production of documents can cure a prior failure to respond.

Once this litigation commenced, DHS appears to have been generally cooperative—not "recalcitrant" or "obdurate"—working with LTC over the course of months and revisiting initial disclosure decisions to produce further information.  Cooperation was needed here, where LTC's requests were in certain cases unclear.  That is all to DHS's credit.  However, this late assistance cannot overcome DHS's unexplained failure to begin processing the requests for more than a year after the requests were filed.  Because the first and fourth factors weigh in favor of fees, and the second and third factors weigh only slightly against awarding fees, the Court finds that LTC is entitled to fees in this case.  Cf. Davy, 550 F.3d at 1163 (granting attorney's fees when first and fourth factors weighed in requester's favor and second and third factors were neutral).

## II.   Reasonableness of Fees Requested

Having concluded that LTC is entitled to an award of attorney's fees, the Court turns to the reasonableness of LTC's request.  The parties agree that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The plaintiff bears the "burden of establishing the reasonableness of its fee request, and supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended."  Role Models Am., 353 F.3d at 245 (cleaned up).  Should a prevailing party request "an outrageously unreasonable amount," courts may deny the application for fees in its entirety.  Env't Def. Fund v. Reilly, 1 F.3d 1254, 1258 (D.C. Cir. 1993).  And "[i]n a case of less egregious overbilling, [courts] may impose a lesser sanction," such as reducing the award.  Id.  Criticizing LTC's billing practices in this case, DHS seeks a blanket denial of fees, or, alternatively, a substantial reduction of the award.  See Opp'n at 23.

### A.  Billing Judgment

DHS contends that the request is outrageous, first, because LTC has not shown "billing judgment," a sort of catch-all term for several issues, which the Court will consider in turn.  Off the bat, DHS complains that the fee demand here is "facially unreasonable . . .  $89,730 in fees—for a routine FOIA matter" involving "the mere filing of status reports," in which LTC "achieved modest success," in the form of a single production order for five of eleven requests.  Id. at 20.  Presumably, this argument is intended to cause the Court some sticker shock.  While this is certainly a high number, it is not particularly shocking considering it results from the hours claimed—around ninety—and the attorney's rate, which LTC claimed as $997 per hour, but which even DHS concedes is $700 to $800 (more on that later).  The high rate, the result of counsel's years of experience, appears to drive up the fee demand in this case more than the hours expended, which equal just over two weeks of full-time work over one and a half years.  As an initial matter, ninety hours does not seem to the Court patently unreasonable for a case involving eleven requests, numerous status reports, and more than 8,500 pages of disclosures, many of which were disputed internally between the parties.  See Case Chron at 1–3.

DHS also contends that LTC's counsel's billing record is "packed with entries for work that is per se non-compensable, excessive, redundant, unnecessary, and apparently irrelevant," and that "many time entries are too vague to explain how the work is compensable."  Opp'n at 20.  This challenge has more merit.

To begin, LTC has claimed reimbursement for time spent on non-compensable tasks.  For example, LTC should not have billed 2.3 hours for time spent drafting unsuccessful oppositions to DHS's motions for extensions of time to respond to the complaint and unsuccessful "appeals" relating to the request on which the Court finally granted summary judgment in favor of DHS.

Mot., Ex. C [ECF No. 36-3] ("Itemization of Hours") at 3[1]; see Elec. Priv. Info. Ctr. v. DHS ("EPIC v. DHS II"), 811 F. Supp. 2d 216, 237–38 (D.D.C. 2011).  Nor should LTC have billed attorney's rates for 0.8 hours of clerical work, 1.2 hours of "wrestling with defective disc," or 2 hours of "[u]ntangling the different numbers given to different requests, necessary because USCIS and OC created confusion."  Itemization of Hours at 2, 4, 6; see Role Models, 353 F.3d at 973; Michigan v. EPA, 254 F.3d 1087, 1096–97 (D.C. Cir. 2001).  However, not all of DHS's complaints as to non-compensable tasks are well-taken.  The Court disagrees with DHS's position that counsel's time spent reviewing the file and refamiliarizing himself with the requests and the litigation generally are per se inappropriate.  Given the high number of requests, and the length of the litigation, the Court does not find it unreasonable that LTC's counsel would bill some time for tasks including "review of entire file, organizing, making a summary[,] [and] determining future actions."  See Itemization of Hours at 3.  Ultimately, it appears counsel billed about four hours on similar tasks, which is not, overall, excessive.

DHS further contends that LTC billed excessive time for compensable tasks, including reviewing records, drafting documents, and conducting legal research.  Most significantly, DHS takes issue with LTC's demand of 31.5 hours for records review.  DHS concedes that some time spent reviewing records in a FOIA case is compensable, since the very subject of FOIA litigation is whether the agency's disclosures satisfy the plaintiff's request and whether the agency's withholdings have a basis in law.  See EPIC v. DHS II, 811 F. Supp. 2d at 240–41.  As LTC points out, more than 8,500 pages were produced during this litigation—a lengthy production requiring time to review for completeness and adequacy of disclosures.  Moreover, as LTC contends—and

---

[1] The government provided the Court with a spreadsheet itemizing LTC's claimed hours in a searchable, sortable form, as well as labeling its specific objections therein.  See Opp'n, Ex. G [ECF No. 39-7]. The Court relied on this spreadsheet, in conjunction with the PDF document submitted by LTC, Itemization of Hours, to review the itemized claims.

the status reports support—LTC raised issues with the FOIA disclosures in a more informal fashion during the litigation, resulting in resolution of disputed issues between the parties without necessitating judicial intervention.  See Case Chron. at 1–2.  Indeed, on several occasions, DHS agreed to re-review documents, reduce its earlier withholdings, and produce further documents to the satisfaction of LTC.  Id.  The Court is, therefore, not convinced that time spent reviewing records was obviously excessive here.

None of the cases cited by DHS support its contrary position that the time spent was excessive because "the parties engaged in limited motions practice solely on request number 11, on which Plaintiff was unsuccessful."  Opp'n at 27.  Indeed, the court in Electronic Privacy Information Center v. Federal Bureau of Investigation ("EPIC v. FBI"), 72 F. Supp. 3d 338 (D.D.C. 2014), deemed it reasonable for a requestor to claim fees for reviewing documents produced in litigation, even though the plaintiff "did not subsequently challenge any of the FBI's redactions or seek further [c]ourt-ordered relief."  Id. at 351.  Likewise, the EPIC v. DHS II court did not suggest that successful motions practice was prerequisite to obtaining fees for reviewed records.  811 F. Supp. 2d at 233.  And Urban Air Initiative, Inc. v. Environmental Protection Agency, 442 F. Supp. 3d 301 (D.D.C. 2020), only approved of a plaintiff's proposal to limit its compensation for records review to 25% of the hours expended; the court did not hold that further fees would be inappropriate.  Id. at 325.

DHS further complains that LTC spent excessive time preparing filings in this case, including 7.3 hours on the complaint and 22.2 hours on status reports and replies thereto.  Opp'n at 27, 29.  The Court shares some of DHS's concerns on this front.  While the Court appreciates LTC's attention to detail in the complaint, it should have been a quicker matter to draft, considering that it follows the same format as a similar complaint the same counsel filed in an earlier action.  See Michigan, 254 F.3d at 1093 (reducing "unduly high" number of hours spent on briefs).

Further, the Court does not find it reasonable to fully reimburse LTC's counsel for time spent drafting individual status reports contrary to the Court's orders that the parties submit joint status reports.  The Court requires <u>joint</u> status reports for good reasons—to encourage the parties to confer, narrow issues of disagreement, and present a clear update to the Court on the status of the litigation.  Submitting separate status reports was unhelpful, confusing, and wasteful of party and court resources.

DHS also claims that LTC's fee award should be reduced because counsel has previously been the subject of substantial fee reductions.  In recent cases, judges in this District have reduced counsel's award by forty and seventy percent.  In <u>Abtew v. U.S. Department of Homeland Security</u>, Civ. A. No. 13-1566 (ABJ), 2016 WL 11897241 (D.D.C. Mar. 31, 2016), the court reduced the fee award by about seventy percent to account for the requester's limited success in the litigation. <u>Id.</u> at *7–8.  The Court did not find that LTC's counsel expended unreasonable time on unnecessary tasks, nor that his billing records were insufficient—the primary issues raised in this litigation. <u>Louise Trauma Center</u>, 2023 WL 3478479, is more relevant.  In that case, the court found that LTC's billing records were "difficult to decipher," but that "from what the Court can tell, [counsel] spent too much time on this case."  <u>Id.</u> at *6; <u>see id.</u> at *6–7.  To the extent these issues are repeated here—and, as the Court has discussed and will discuss further, some are—that warrants the Court's consideration in determining the appropriate fee award.  <u>See</u> <u>Citizens for Resp. and Ethics in Washington v. DOJ</u>, ("<u>CREW v. DOJ</u>"), 142 F. Supp. 3d 1, 14 (D.D.C. 2015) (reducing fee award, in part, because "even in the face of criticism from other judges, [the requester] has chosen to perpetuate . . . uncertainty with its [billing] approach").

Finally, DHS asserts that discrepancies between the fees enumerated on the time sheet and requested in the motion "cast doubt on the precision of counsel's recordkeeping."  Opp'n at 21.  In its motion, LTC requests 90 or 90.5 hours for legal work performed from 2021–2022, as well as

22 hours for legal work performed in 2024 on the fees motion ("fees on fees").  See Mot. at 21–22, 28–29.[2]  By contrast, the time records submitted claim 90.5 hours in fees and 22.6 hours in fees on fees.  Itemization of Hours at 8.  But, in fact, when the itemized figures are added up, they only amount to 89.2 hours in fees and 22.6 hours in fees on fees.  See Fees Spreadsheet.  While this sloppiness is relevant to the "fees on fees" entitlement, the Court does not find it so problematic as to cast significant doubt on the time sheets.  Because the time sheet is the only document that would enable the Court to determine the amount of time actually expended, the Court will work from the figures on the time sheets.  Accordingly, the Court understands LTC to be seeking 89.2 hours in fees and 22.6 hours in fees on fees.

### B.  Coherence of Billing Records

DHS also asserts that LTC's demand is outrageous and should result in an outright denial of fees, because the billing records in this case are incoherent—they "lack rhyme or reason." Opp'n at 21.  While it is not unusual for an attorney to exclude or write off hours he would consider unreasonable, or decline to bill when a task takes a literal minute, the Court does share some of DHS's concerns about LTC's billing practices.  Most significantly, many of LTC's billing records do not adequately describe how counsel's time was spent.  Of specific concern to the Court are the entries describing the records review in this case, which often fail to identify what records were being reviewed, or for what purpose.  Certain entries describe only that counsel "review[ed] 945 page file page 1-400" or "review[ed] 92 pages- Third country rule." See Itemization of Hours at 3–4.  From these descriptions, it is difficult for the Court to discern what counsel actually reviewed or whether the time was reasonably expended.  Further, the pages accounted for in the time sheet do not line up precisely with the number of pages received, raising some question about the

---

[2] LTC (properly) does not request any fees for legal work performed on its unsuccessful summary judgment motion in 2023.  Mot. at 22.

importance of reviewing records in this case.  There may be good reason for counsel's decisions, but the Court cannot comfortably reach that conclusion.  Other time entries are similarly ill-described, stating, for example "Research on 'Info processing system,'" and "Search for OIP requirements."  See id. at 5.  Without any explanation of why this work was conducted—for what ultimate work product—the Court is unable to conclude with the requisite degree of certainty that the time spent was reasonable.  Considering that issues with detailed timekeeping have previously been raised with respect to LTC's counsel, the Court expects that he would have improved his record-keeping practices.  See Louise Trauma Ctr., 2023 WL 3478479, at *6.

However, the billing records are in some ways not as egregious as many of the examples cited by DHS.  Unlike in Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Homeland Security ("CREW v. DHS"), Civ. A. No. 08-1046 (JDB), 2010 WL 8971920 (D.D.C. Apr. 21, 2010), LTC's counsel has mostly avoided billing multiple tasks in the same line-item entry.  Id. at *2; see Role Models Am., 353 F.3d at 971 (chastising attorneys for "lump[ing] together multiple tasks, making it impossible to evaluate their reasonableness").  And, unlike in CREW v. DHS, while LTC's entries are somewhat generic and repetitive (e.g., "Receipt and Review" or "R&R"), a significant portion do nonetheless tie counsel's task to the specific record reviewed or document drafted and have allowed the Court (and apparently opposing counsel) to evaluate whether an appropriate amount of time was spent on the given task.  See CREW v. DHS, 2010 WL 8971920, at *2; cf. Role Models Am., 353 F.3d at 971 (critiquing bill for law clerk who spent eight consecutive weekdays "[r]esearch[ing] and writing for appellate brief" (first alteration original)).  In sum, the Court shares some of DHS's concerns with the billing practices here but does not find them as egregious as the agency contends.

### III.    Calculation of the Fee Award

#### A.  Hours Expended in Underlying Litigation

DHS asserts that, for the reasons described above, the Court should deny fees entirely or reduce the awarded hours by seventy-five percent after deducting non-compensable time and reducing excessive hours, because the demand for fees here is "outrageously unreasonable." Opp'n at 19 (quoting Env't Def. Fund v. Reilly, 1 F.3d 1254, 1260 (D.C. Cir. 1993)).  The D.C. Circuit has permitted district courts to deny fees entirely when a request is made for an "outrageously unreasonable amount, lest claimants feel free to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place."  Reilly, 1 F.3d at 1258.  However, as this Court has previously recognized, denial of all fees is "to be reserved for only the most severe of situations, and appropriately invoked only in very limited circumstances," such as "when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith." CREW v. DOJ, 142 F. Supp. 3d at 14 (quoting Jordan v. DOJ, 691 F.2d 514, 518 (D.C. Cir. 1982)).

This is not a case where an outright denial of fees is warranted.  "[T]he ultimate inquiry is whether the total time claimed was reasonable."  Smith v. District of Columbia, 466 F. Supp. 2d 151, 158 (D.D.C. 2006) (emphasis added).  As the Court explained earlier, the attorney's rate is the driving force behind the overall fee award requested in this case.  Approximately ninety hours expended on a case involving multiple FOIA requests over the course of two years is not a facially unreasonable amount of time to spend on this case.  Moreover, it appears that counsel conducted significant amounts of properly billable work, including drafting a complaint, reviewing records produced, working with opposing counsel on joint status reports, and preparing for and appearing at hearings.  Hence, it would be unfair to outright deny fees in this case.

However, the issues discussed above do warrant a significant reduction. For the following reasons, the Court considers a fifty-percent reduction in the time billed as fees to be appropriate. First, around eight hours were improperly billed for clerical tasks or motions on which plaintiff was ultimately unsuccessful. This included time spent "wrestling with defective disc," making packages to bring to the post office, opposing DHS's motions for extensions of time, and reviewing records relating to the cause of action on which summary judgment was granted to DHS. Second, around twenty-five hours were billed for excessive or unnecessary tasks, including some time spent drafting the complaint and time spent preparing single-party status reports, or replies to status reports submitted by DHS. As the Court explained, such efforts were contrary to the Court's orders, and ultimately less helpful than joint presentation would have been. Third, many of counsel's time entries were not sufficiently detailed to allow the Court to determine with a "high degree of certainty" that the hours in this case were reasonably and actually expended. Role Models Am., 353 F.3d at 970; see Webster v. DOJ, Civ. A. No. 02-603 (RC), 2021 WL 4243414, at *12–13 (D.D.C. Sept. 17, 2021) (imposing 40% reduction for severely inadequate recordkeeping); Citizens for Resp. & Ethics in Wash. v. DOJ, 825 F. Supp. 2d 226, 230–31 (D.D.C. 2011) (37.5% reduction); Boehner v. McDermott, 541 F. Supp. 2d 310, 324–26 (D.D.C. 2008) (25% reduction). This problem was especially severe with respect to the time entries for the records review, which represented a third of the hours billed and which did not specify the request for which the records were reviewed or counsel's intent in reviewing the records. Fourth, counsel has previously been chastised by another judge in this District for many of the same issues encountered here. See Louise Trauma Ctr., 2023 WL 3478479, at *7 (applying 40% across-the-board reduction to account for counsel's deficiencies); see also CREW v. DOJ, 142 F. Supp. 3d at 14 (reducing award in part due to repeat nature of billing issues). Having thoroughly reviewed the extent of the deficiencies and taken account of the improperly and excessively billed time, the

Court is satisfied that a fifty percent reduction in the fee award is warranted.  The Court considers the resulting figure reasonable to compensate counsel for his work on this case, while taking account of the serious deficiencies identified and their repeat nature.[3]

### B.  Hours Expended in Fees-on-Fees Litigation

Next, the Court must consider what fees should be awarded for work performed on the fee litigation in this case.  It is well-established that a fee applicant may also seek fees for hours expended on preparing and litigating a fee request.  See EPIC v. DHS II, 811 F. Supp. 2d at 237.  Courts have an "obligation to scrutinize the hours spent preparing the fee petitions to insure that the total is reasonable and that it does not represent a windfall for the attorneys."  Heard v. District of Columbia, Civ. A. No. 02-296 (CKK), 2006 WL 2568013, at *19 (D.D.C. Sept. 5, 2006) (quoting Farris v. Cox, 508 F. Supp. 222, 226 (N.D. Cal. 1981)).  Just as in the case of ordinary fees, "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."  Comm'r, Immigr. and Naturalization Serv. v. Jean ("INS"), 496 U.S. 154, 163 n.10 (1990).  Here, DHS contends that LTC's request for 22.6 hours of fees on fees should be reduced by ninety percent.  Opp'n at 31.

 DHS has three reasons for the reduction.  First, LTC "presented an outrageous fee demand" demonstrating a lack of billing judgment and impermissible, excessive, or unnecessary entries.  Opp'n at 30.  As detailed above, the Court accepted DHS's points here to some degree, although the Court did not consider the bills to be as egregious as suggested.  Second, DHS argues that LTC should achieve limited success in this fee litigation, which it now has, receiving compensation for only fifty percent of the hours billed.  And third, according to DHS, counsel's time entries were excessive considering its fee petition in this case was repetitive of a petition filed

---

[3] LTC also sought reimbursement for $402 in costs.  See Mot. at 1, 28–29; Itemization of Hours at 2.  DHS does not substantively dispute this demand, and the Court considers the issue conceded.

in earlier actions, and counsel has billed for the preparation of a summary document.  The Court is not persuaded by this final argument.  Even considering the redundancy between the present motion and motions filed in earlier cases, it was reasonable to spend 4.9 hours updating the motion to reflect the facts of this case and additional recent case law.  Further, the Court did find the summary document helpful considering the number of requests and the length of the litigation.  As LTC did not know that DHS would concede that it had "substantially prevailed" in this litigation, it was reasonable for LTC to present the Court with a timeline demonstrating the fruits of its efforts.

While the Court does not agree that a ninety percent reduction in fees on fees is warranted here, some reduction is warranted.  The fees-on-fees petition was only partially successful, justifying only 50% of the hours sought.  See INS, 496 at 163 n.10.  One important reason is that the records included in the petition were not sufficiently well-described to provide the Court with the requisite certainty that the hours were reasonably expended.  Further, the Court is wary of permitting the fees-on-fees litigation to become disproportionate in light of the fee award.  See Urban Air Initiative, 442 F. Supp. 3d at 326–27 (reducing fees likely to represent a "windfall" for plaintiff's counsel).  The Court accordingly finds that a 50 percent reduction of hours, parallel to the reduction ordered in the fees award, is appropriate here.  See Elec. Priv. Info. Ctr. v. FBI, 80 F. Supp. 3d 149, 163 (D.D.C. 2015) (reducing fees-on-fees award to the same extent as the fee award).

### C.  Reasonable Hourly Rate

Lastly, the Court considers the reasonable hourly rate.  In determining the reasonable hourly rate of public interest attorneys, judges in this Circuit typically apply a matrix representing a market rate derived from community rates.  See, e.g., EPIC v. DHS I, 218 F. Supp. 3d at 47. Although the parties initially disputed the appropriate rates to apply, in its reply brief, LTC agreed to accept the rate matrix proposed by DHS, known as the U.S. Attorney's Office's Fitzpatrick

Matrix.  <u>See</u> Reply at 20 ("Plaintiff acquiesces to the agency, and will accept Fitzpatrick Matrix rates."); <u>see also</u> <u>J.T. v. District of Columbia</u>, 652 F. Supp. 3d 11, 36 (D.D.C. 2023) (adopting Fitzpatrick Matrix for complex federal litigation in the District of Columbia).  Accordingly, the Court considers this issue conceded and will apply the Fitzpatrick rates.  <u>See</u> U.S. Att'y's Off. for D.C., <u>The Fitzpatrick Matrix</u>, https://www.justice.gov/usao-dc/media/1353286/dl?inline [https://perma.cc/9Y3W-TDC9] ("Fitzpatrick Matrix").  Further, the parties appear to be in agreement that LTC's counsel has more than 35 years of experience, placing him in the highest paid part of the matrix.  <u>See</u> Opp'n at 26; Decl. of David L. Cleveland [ECF No. 36-2] ¶ 22.

The last disputed issue between the parties is whether the Court should apply the matrix rates for 2024 to all fees, as compensation for delay in payment, or the matrix rate applicable during the year the bills were incurred.  The Court agrees with DHS that the applicable rate is the rate in effect during the year that bills were incurred.  "[A]bsent an explicit waiver of sovereign immunity, attorney's fees awarded against the federal government must be based on historical rates."  <u>Save Our Cumberland Mountains, Inc. v. Hodel</u>, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (internal quotation marks omitted); <u>accord</u> <u>Libr. of Cong. v. Shaw</u>, 478 U.S. 310, 314 (1986).  "Because FOIA's fee-shifting provision does not authorize compensation for delay," the Court may not "grant[] a fee enhancement to compensate counsel for the delay in receiving his fees."  <u>Weisberg v. DOJ</u>, 848 F.2d 1265, 1272 (D.C. Cir. 1988), <u>overruled on other grounds by</u> <u>King v. Palmer</u>, 950 F.2d 771 (D.C. Cir. 1991); <u>see</u> 5 U.S.C. § 552(a)(4)(E).  Accordingly, courts in this District generally award fees at the rates applicable during the years they were incurred.  <u>See, e.g.</u>, <u>Hall v. CIA</u>, 115 F. Supp. 3d 24, 32 (D.D.C. 2015); <u>Louise Trauma Ctr.</u>, 2023 WL 3478479, at *7 n.6.[4]  Hence, the Court will apply the Fitzpatrick Matrix rates corresponding to an attorney with

---

[4] LTC's citation to <u>Missouri v. Jenkins</u>, 491 U.S. 274 (1989), is inapposite.  That case held only that courts may award current rates as compensation for delay, as authorized by the Civil Rights Attorney's Fees Act, against a defendant state consistent with the Eleventh Amendment.  <u>Id.</u> at 284.  The <u>Jenkins</u> Court distinguished <u>Library of</u>

more than 35 years of experience in the year in which the work was performed.  See Fitzpatrick

Matrix.

### D.  Fee Award

Hence, the appropriate fee award here is as follows:

| Time Period | Plaintiff's Claimed Hours | Court's Adjusted Hours | Fitzpatrick Fee Matrix Rate | Amount Earned |
|---|---|---|---|---|
| **2021** | 13.8 | 6.9 | $736 | $5,078 |
| **2022** | 75.4 | 37.7 | $760 | $28,652 |
| **Fees on Fees (2024)** | 22.6 | 11.3 | $864 | $9,763 |
| **Costs** | | | | $402 |
| | | | **Total** | **$43,895** |

### Conclusion

For the foregoing reasons, the Court will grant the motion in part and award LTC $33,730

in fees, $9,763 in fees on fees, and $402 in costs.  This calculation implements a 50 percent

reduction in the number of hours billed on an annual basis, multiplied by the Fitzpatrick matrix

rate during the year the work was performed.  Costs were included as billed.  An Order consistent

with this Memorandum Opinion will issue.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: July 1, 2024

---

Congress, which "involved an application of the longstanding 'no-interest rule,' under which interest cannot be awarded against the United States unless it has expressly waived its sovereign immunity."  Id. at 280.